Commonwealth *v.* Mercier, Appellant.

Argued November 10, 1971; reargued November 14, 1972. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Henry Thomas Dolan,* with him *Fein, Criden, Johanson, Dolan and Morrissey,* for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Michael R. Stiles,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 16, 1973:

Robert Mercier was convicted by a jury of murder in the first degree and the punishment was fixed at life imprisonment. Motions in arrest of judgment or for a new trial were denied. From the judgment of sentence then imposed the instant appeal was filed.

The prosecution flowed from the shooting and subsequent death of Samuel Crudup in Philadelphia in 1969. The testimony produced by the Commonwealth at trial established that five males robbed a small corner store, of which Crudup was the proprietor, and during the course of the robbery Crudup was fatally shot by one of the robbers. The testimony also established that three of the males entered the store and two remained outside, up the street from the store, to act as "lookouts". Mercier confessed to the police, without the assistance of counsel, that he was one of the individuals on the street acting as a lookout. The primary question presented on appeal is whether constitutional due process was violated at trial by permitting the evidentiary use of this confession.[1]

The record reveals the following salient facts.

The robbery and killing occurred during the afternoon of June 25, 1969. The police immediately arrived on the scene, and an investigation was undertaken. On June 27, appellant, Mercier, accompanied by his mother and an aunt, voluntarily went to police headquarters,

---

[1] A pretrial motion to suppress the confession was overruled after an evidentiary hearing.

and all three were taken to the homicide division. Before any questions were asked of appellant, he was read the required *Miranda*[2] warnings. At this juncture, the record reveals that appellant requested the assistance of counsel and refused to answer any questions until counsel was provided. The two police detectives who had administered the constitutionally required warnings left the room; however, they returned almost immediately and read appellant the statement of one Leroy Washington (one of the five individuals who allegedly participated in the crime) which implicated appellant as one of the perpetrators of the crime. Approximately thirty minutes to one hour thereafter, appellant waived his right to counsel, took a polygraph test, and gave the confession to the police wherein he stated he was one of the lookouts.

The law is clear that if an individual is given the *Miranda* warnings and responds that he wishes to exercise any of those rights, all interrogation must cease. See *Miranda v. Arizona, supra,* at 474;[3] *Commonwealth*

---

[2] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966).

[3] The following language was employed in *Miranda* in discussing this point: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than a product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." 384 U.S. 473-74, 86 S. Ct. at 1627-28.

*v. Nathan,* 445 Pa. 470, 285 A. 2d 175 (1971); *Commonwealth v. Leaming,* 432 Pa. 326, 247 A. 2d 590 (1968). Thus, the first question for discussion is, was the reading of the statement of a third party, which implicated appellant, "interrogation" within the meaning of *Miranda.* We rule it was.[4]

In *Commonwealth v. Simala,* 434 Pa. 219, 227, 252 A. 2d 575 (1969), we stated that "any question likely to or expected to elicit a confession constituted 'interrogation' under Miranda." And in *Commonwealth v. Bordner,* 432 Pa. 405, 247 A. 2d 612 (1968), we held that the use of the office of a third party by the police was as much interrogation as if the questions were propounded by the police themselves. Given this background, in the recent case of *Commonwealth v. Hamilton,* 445 Pa. 292, 285 A. 2d 172 (1971), we dealt with a similar question in an analogous situation. In *Hamilton,* the accused was taken to a police station but was not administered the *Miranda* warnings. He was then confronted with two individuals who had previously confessed to the crimes therein involved, and these individuals accused Hamilton of being the triggerman in the crimes. Mr. Justice POMEROY, speaking for the Court, held this procedure constitutionally invalid and a form of interrogation stating: "A person whose freedom is restrained and who is a suspect must first be apprised of his constitutional rights prior to the initiation of *any* form of official interrogation be it direct or conducted indirectly through the offices of a third party." (Emphasis in original.) Id. at 297, 285 A. 2d at 175.

Thus, we conclude, based on this precedent, that reading the statement of a third party which implicated the appellant was interrogation. We refuse to distinguish between confronting the appellant directly with those

---

[4] But see, *Fellows v. State,* 13 Md. App. 206, 283 A. 2d 1 (1971).

who implicate him and reading their statement to him, both have the same effect—both are a form of official interrogation. Consequently, reading the statement after appellant had exercised his *Miranda* rights was totally impermissible. Interrogation should have ceased once the appellant exercised his constitutional rights, and since we hold the reading of the statement of a third party to appellant was a form of interrogation, obviously interrogation did not cease. Hence, the police violated the mandate of *Miranda.*

The Commonwealth argues that appellant later voluntarily changed his mind about not answering questions without the assistance of legal counsel, effectively waiving his rights in this regard and rendering his subsequent confession admissible.

As we said in *Commonwealth v. Nathan, supra* at 477: "For the Commonwealth to persuade the court that appellant, after exercising his privilege, changed his mind voluntarily, it has the burden of showing that appellant's change of mind occurred without his being 'threatened, tricked, or cajoled'."

This case is quite similar to *Nathan, supra,* in that in both cases, after the defendant exercised his right not to be questioned until an attorney was present to represent him, the police confronted him with the statement of a co-felon in order to convince him to change his mind. The only circumstance which distinguishes the instant case from that in *Nathan, supra,* is that here, appellant was permitted an opportunity to speak with his mother and his aunt prior to making his statement and indicating that he did not require a lawyer. We do not believe that this opportunity to talk to two lay people, albeit close family members, was sufficient. Appellant had indeed indicated his desire to avail himself of the services of an attorney before submitting to interrogation. What followed thereafter was all the result of the improper procedure of the police in confronting

him with the third party's statement implicating him. For a waiver to be effective, the reversal of the defendant's position must have been initiated by him. This is not a situation where a person in custody, after asserting his rights, indicated a desire to waive them without any further activity on the part of the police. Here, the police initiated the chain of events which culminated in appellant's inculpatory statement by, in effect, saying to him, after he had asserted his rights, "we have you now because we have a statement from another party which implicates you." To hold that one in appellant's situation made a knowing and intelligent waiver in such circumstances would be reaching too far to overcome the presumption against a waiver, which operates in favor of appellant.

Judgment of sentence reversed and case remanded for a new trial.

———

DISSENTING OPINION BY MR. JUSTICE EAGEN:

I agree with the majority that when Mercier voiced his constitutional right to remain silent and to have the assistance of counsel during the police questioning, that all police interrogation should have ceased. I also agree the police acted contrary to *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), by then confronting Mercier with Leroy Washington's accusatory statement. I further agree the burden was on the Commonwealth to affirmatively establish Mercier later voluntarily decided to waive his right to remain silent and to the assistance of counsel. But, at this point the majority and I part company.

Despite his original insistence on his right to remain silent and to the assistance of counsel, it is my view Mercier had the right to change his mind and to then proceed to waive these rights if he did so voluntarily. This Court so held in *Commonwealth v. Franklin,* 438 Pa. 411, 265 A. 2d 361 (1970). I further believe

this is what happened in this case, and that the waiver was effective and valid. In order to more clearly understand my position on this point, certain facts established by the record, but unmentioned in the majority opinion, need to be set forth.

At the time involved Mercier was twenty years of age and was of average intelligence. Upon being confronted with Washington's statement, Mercier said nothing incriminating, but asked to converse privately with his mother and aunt. Permission was granted and the three conferred privately for approximately twenty minutes. Upon emerging from this conference and without anything further being said by the police, Mercier asked to be given a polygraph test. He was then again administered a full set of *Miranda* warnings, said he understood, but still desired the test. In response to the question, if he wanted a lawyer to be present he stated: "No, I asked the other detective for one, but I changed my mind. I want to tell you what happened without having a lawyer with me." At this point, Mercier was allowed to again speak privately with his mother and aunt. At the conclusion of this second conference, which consumed at least ten minutes, the requested test proceeded. At the conclusion of the test, Mercier was warned of his *Miranda* rights for the third time and shortly thereafter gave the statement which the majority say was erroneously admitted in evidence at trial.

It should be noted Mercier came voluntarily to the police; that he said nothing incriminating when confronted with Washington's statement; that this occurred some time later, and only after he had conferred privately for at least thirty minutes with members of his immediate family, and only after the completion of a polygraph test which he himself requested. It should also be noted there was no extensive period of questioning, no incommunicado incarceration, and no physical abuse, and it is undisputed Mercier was fully aware

of his rights. On these facts the waiver was certainly voluntary or at least it may not be ruled involuntary as a *matter of law*. Cf. *Commonwealth v. Jefferson*, 445 Pa. 1, 281 A. 2d 852 (1971).

The majority say that once Mercier asserted his constitutional rights, any subsequent waiver thereof to be effective "must have been initiated by him." But, isn't this what occurred?

After the police confronted Mercier with Washington's statement, the interrogation did stop. The police said nothing further at this point. It was Mercier who initiated the subsequent events by requesting the polygraph test. But say the majority, even if this is so, having once asserted his constitutional rights there could not be a subsequent "knowing and intelligent waiver" unless a lawyer were present to assist in this decision. In my view, this is an unwarranted and improper extension of *Miranda*. In fact, no court, within my knowledge, has ever previously ruled that a twenty-year-old individual of average intelligence must have the assistance of a lawyer before he may effectively waive his right to have one.

I dissent.

Mr. Chief Justice JONES and Mr. Justice POMEROY join in this opinion.