Commonwealth *v.* Frambro, Appellant.

Submitted March 28, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Byron Cotter* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*James Garrett, Mark Sendrow, David Richman,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 23, 1974:

In this appeal, it is contended that the lower court erred in denying a pre-trial motion to suppress statements made to the police while the appellant was incarcerated and awaiting trial.

On February 16, 1972, Detective Theodore Scurry of the Philadelphia Police Department arrested the appellant on charges of burglary, larceny and robbery. At the time of the arrest, appellant was given his *Miranda* warnings and refused to make a statement with-

out the presence of an attorney. At his preliminary arraignment on February 17, 1972, a Public Defender was appointed to represent the appellant. On that date, a preliminary hearing was conducted on some charges but continued with respect to the instant matter because the complainant was not present. Detective Scurry was present during the course of the proceedings on this date. On March 2, 1972, Detective Scurry went to the Detention Center where appellant had been incarcerated since the time of his arrest. He again gave the appellant his *Miranda* warnings and told the appellant "it would be in his best interest" to give a statement. Despite the fact that appellant had counsel and despite Detective Scurry's knowledge of previous refusals to give statements to the police and the appointment of counsel, no effort was made to contact defense counsel. At this meeting, appellant gave a signed statement implicating himself in the alleged crime. Appellant's subsequent motion to suppress this statement was denied on May 11, 1972. Appellant was convicted on charges of aggravated robbery and burglary, and received consecutive sentences of one to five years. This appeal followed.

This case involves some very serious questions on the right of police to conduct repeated interrogations of an accused after he has refused to make a statement without presence of counsel. This case does not involve the same issue as in *Commonwealth v. Mercier,* 451 Pa. 211, 302 A.2d 337 (1973), wherein the police had given the appellant his *Miranda* warnings, and, after he requested the presence of counsel, interrogation continued until a confession had been obtained and the request for counsel "withdrawn". In that case, the Supreme Court noted that the actions of the police were in clear violation of *Miranda v. Arizona,* 384 U.S. 436, 469 (1966), which required that once the accused "indicates in any manner, at any time prior to or during

questioning that he wishes to remain silent, the interrogation must cease . . . ."

While in this case, appellant was afforded the right to obtain counsel, knowing that counsel had been appointed, the police reinstituted the interrogation process without informing counsel of the interrogation. The supposed waiver of appellant's right to have counsel present came after the re-initiation of interrogation and the ambiguous comment that cooperation with the police would be "in his best interest." In *Mercier*, supra at 216, our Supreme Court stated: "For a waiver [of right to remain silent] to be effective, the reversal of the defendant's position must have been initiated by him. This is not a situation where a person in custody, after asserting his rights, indicated a desire to waive them without any further activity on the part of the police. Here, the police initiated the chain of events which culminated in appellant's inculpatory statement . . . ."

In a case nearly identical to the instant appeal, and one involving a weaker inducing statement by the police prior to the "waiver" of the accused's rights, our Supreme Court reversed a conviction for failure to suppress a statement so obtained. *Commonwealth v. Nathan*, 445 Pa. 470, 285 A. 2d 175 (1971). In that case, the appellant had refused to make any statement without the presence of counsel. Appellant chose the name of an attorney out of a list of attorneys presented to him from the Allegheny County Bar. Police tried to locate counsel but were informed that he was not in. A short time later, a police officer visited the appellant in his cell and after advising the appellant of his rights once again, told the appellant that "sometimes it is good to give a statement and sometimes not." Appellant thereupon "waived" his rights and gave an inculpatory statement to the officer. In reversing, the Supreme Court said at 475-477 :

"When appellant told the Pittsburgh police that he wanted an attorney, the interrogation properly ceased. It should not have resumed until Mr. Brown had been located and had consulted with appellant. See Commonwealth v. Leaming, 432 Pa. 326, 247 A. 2d 590 (1968). The fact that Officer Terscak did not know the details concerning the attempt on the part of the Pittsburgh police to locate Mr. Brown for appellant makes no difference. His fellow officers should have noted appellant's exercise of his rights and his request for Mr. Brown on appellant's folder. Appellant effectively exercised his constitutional privilege to have an attorney present during interrogation. In order for the Commonwealth to use a statement made after appellant indicated a desire to exercise his rights, it has, in the words of the *Miranda* opinion, the 'heavy burden' of '[demonstrating] that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel . . .' without being 'threatened, tricked or cajoled' into the waiver.

". . . When Officer Terscak told appellant that 'sometimes it is good to give a statement and sometimes not,' he was engaging in a practice similar to that which we condemned in Commonwealth v. Singleton, 439 Pa. 185, 266 A. 2d 753 (1970), where the authorities told the defendant that any statement made by him could be used *'for* or against him.' (Emphasis supplied)

"As we explained in Singleton: '. . . the inclusion of [the word "for"] acts as a subtle inducement to speak, helps neutralize the suspect's awareness of the hostile environment, and vitiates the intended impact of the warning . . . . In stating its reasons for requiring the warning about the future use of any statements, the [Miranda] Court said: '[t]his warning is needed in order to make . . . [the suspect] aware not only of the privilege, but also the consequences of forgoing it. It

is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest.' (At pages 190-91).

"The Commonwealth, admitting the impropriety of the words used by Officer Terscak, argues that since appellant was also given a correct statement of the warnings, this case is controlled by Commonwealth v. Camm, 443 Pa. 253, 277 A. 2d 325 (1971).

"However, we are dealing with a different issue than we dealt with in Camm. In the instant case, unlike Camm, appellant exercised his privilege. He requested counsel and refused to make a statement without counsel being present. For the Commonwealth to persuade the court that appellant, after exercising his privilege, changed his mind voluntarily, it has the burden of showing that appellant's change of mind occurred without his being 'threatened, tricked, or cajoled.' Here, since the officer admitted that he told appellant that a statement might help him, the Commonwealth failed to meet its burden."

In the instant case, the inducing statement by Detective Scurry was tantalizingly promising in nature. Without specifying leniency, the ambiguous meaning of "best interests" effectively dissolved appellant's prior reluctance to give a statement without counsel. While in Nathan, supra, the questioning officer was unaware of the efforts of police to obtain counsel of appellant's choice, Detective Scurry was present at the time of the arrest and at the appointment of counsel. He knew appellant had counsel and made no effort to get in touch with him before initiating the interrogation. We believe, under the circumstances, appellant's statement should have been suppressed.

The judgments of sentence imposed on Bill of Indictment Nos. 781-782, are reversed, and appellant is granted a new trial.