Commonwealth *v.* Brueckner, Appellant.

Argued May 3, 1974. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*William N. Sterling,* with him *John J. Duffy,* for appellant.

*Stewart J. Greenleaf,* Assistant District Attorney, with him *J. David Bean,* Assistant District Attorney, *William T. Nicholas,* First Assistant District Attorney,

and *Milton O. Moss*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 16, 1974:

The appellant, Gerald Brueckner, was convicted by a jury of murder in the second degree, aggravated assault and battery and violation of the Uniform Firearms Act. Post trial motions were denied and separate prison sentences were imposed on each conviction. This one appeal was filed.[1]

From the trial evidence, the jury was warranted in finding the following facts:

The appellant Brueckner and one Roger Reitelbach were members of a motorcycle club known as the "Mongrols" which was feuding with a rival motorcycle club known as the "Warlocks." John Kline was a member of the "Warlocks."

About 11:45 p.m. on December 20, 1970, Kline responded to a knock on the door of his apartment in Ardmore, Montgomery County, and was confronted by Brueckner and Reitelbach with guns drawn. The two men made a forced entry into the apartment and forced Kline, Paul Kocher, and one Julie D'Anjolell, who were in the apartment, into the bedroom and held them at gun point. Kline and D'Anjolell were told to dress and prepare to leave the apartment. Kline began getting dressed, but then engaged Brueckner in a struggle. Brueckner subdued Kline, and again told him to get dressed. At this moment, there was another knock on the apartment door which Reitelbach answered and he immediately engaged in gunfight in the hallway with another member of the "Warlocks," Michael Rhoads.

At the time of the gunfight in the hall, Kline pushed D'Anjolell into the bathroom and turned to confront

---

[1] As to appellate jurisdiction, see the Act of July 31, 1970, P. L. 673, art. II, §202(1), 17 P.S. §211.202(1) (Supp. 1974-1975), and art. V, §503(a), 17 P.S. §211.503(a) (Supp. 1974-1975).

Brueckner. Brueckner then shot Kline in the chest causing his death within a few minutes. Brueckner then fled the bedroom and shot Kocher,[2] who was unarmed, and in the living room. Reitelbach was apprehended shortly after the occurrence and Brueckner was taken into custody a few days later.

Brueckner initially asserts the verdict was contrary to the weight of the evidence and argues the evidence presented by the Commonwealth was insufficient to establish malice. We disagree, and hold the jury had ample evidence before it to support the murder conviction.

It is undisputed Brueckner fired the fatal bullet. The law is well established that the use of a deadly weapon on a vital part of the body raises the inference that the accused shot the victim with malice and intent to kill. In *Commonwealth v. Hornberger*, 441 Pa. 57, 270 A.2d 195 (1970), this Court stated: "Legal malice exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty. It may be found from attending circumstances, and, like the specific intent to kill, may be inferred from the intentional use, without legal excuse or justification, of a deadly weapon on a vital part of another human being." *Id.* at 61, 270 A.2d at 197. Hence, the jury was warranted in finding malice from the admitted use of a gun against the chest of Kline.

Brueckner next contends he killed Kline in self-defense. Assuming appellant's trial testimony would establish the killing occurred in self-defense, it was within the province of the jury to reject his version of the facts, and believe the testimony of the Commonwealth witnesses, which clearly was ample to warrant

---

[2] Kocher's wound was not fatal.

a finding that the killing of Kline was not in self-defense. See *Commonwealth v. Burton,* 450 Pa. 532, 301 A.2d 599 (1973).

Brueckner further contends reversible error was committed when the trial judge allowed three black and white photographs of the body of the victim, which had been introduced into evidence, to go out with the jury.[3] Appellant contends the photographs tended to inflame the passions of the jury, and it was an abuse of discretion by the trial judge. See *Commonwealth v. Powell,* 428 Pa. 275, 241 A.2d 119 (1968). We disagree.

Initially, we specifically recognize the Commonwealth tried its case under a dual theory, that is, felony murder and nonfelony first degree murder. In *Commonwealth v. Ford,* 451 Pa. 81, 301 A.2d 856 (1973), we emphasized the importance of the Commonwealth trying its case under alternative theories stating: "In Powell this Court did find an abuse of discretion when potentially inflammatory photographs were introduced in a felony murder case. We emphasized there that 'we have a clear felony murder case where the force used and the nature and extent of the injuries involved have no bearing on a finding of first degree felony murder.' Powell, supra, at 279, 241 A.2d at 121; see Commonwealth v. Robinson, 433 Pa. 88, 93, 249 A.2d 536, 539 (1969); Commonwealth v. Wilson, 431 Pa. 21, 31, 244 A.2d 734, 740 (1968). Indeed, if this were 'a clear felony murder case,' the Commonwealth would be hard pressed to find any justification for the admission of two closeup photographs of the murder victims showing stab wounds.

"However, the Commonwealth's alternative theory of the case was nonfelony first degree murder. On this

---

[3] It is within the sound discretion of the trial judge to allow exhibits to go out with the jury. See Rule 1114, Pa. R. Crim. P.; *Commonwealth v. Novak,* 395 Pa. 199, 150 A.2d 102 (1959).

theory these photographs were admissible to show the use of a deadly weapon on a vital part of the body in order to infer an intent to kill. See, e.g., Commonwealth v. Moore, 398 Pa. 198, 202-03, 157 A.2d 65, 68 (1959) and cases cited therein. Clearly though, the test of Powell is applicable to all homicide cases, and therefore we must determine whether the 'essential evidentiary value' of these photographs in this first degree murder case 'outweighs the likelihood of inflaming the minds and passions of the jurors.' " *Id.* at 86-87, 301 A.2d at 858-59.

We have reviewed the photographs and find their evidentiary value outweighs the likelihood of inflaming the minds and passions of the jury. Two of the photographs depict the body of the victim and show where the bullet entered and left the body (directly in the center of the chest, and exited below the left arm). These photographs were essential to show the location of the wound, from which the jury could infer intent to kill. The third photograph depicted the room in which the victim was shot and the location, size and position of the victim. All of these points were essential to the Commonwealth's proving its case. Moreover, in reviewing the photographs, we are unable to accept appellant's contention that the photographs were gruesome or unsavory to the point where they would inflame the jury. The body of the victim had been cleaned of all blood, and the trial judge took the wise precaution of covering those portions of the photographs showing the face of the victim so the jury would be unaffected by any facial expression of the victim. In *Commonwealth v. Morgan,* 448 Pa. 494, 295 A.2d 77 (1972), we were faced with almost exactly the same factual situation, and we therein stated: "Two assignments of error contend the trial court erroneously permitted in evidence two exhibits offered by the Commonwealth. One of these exhibits was a black and white

photograph depicting the upper portion of the victim's torso lying on the floor of the kitchen following the shooting. The other challenged exhibit was a diagram prepared by investigating police officers showing the location and measurements of rooms in the Morgan residence which figured in the quarrel and shooting.

"The record manifests the challenged exhibits had probative value and also that they were an aid to a better understanding of the occurrence involved. As to the photograph complained of we are not persuaded it was gruesome or inflammatory. Under such circumstances the trial court did not abuse its discretion in permitting evidentiary use of these exhibits." *Id.* at 496-97, 295 A.2d at 78. Hence, there is no merit in this assignment of error.

Lastly, it is urged the trial judge committed reversible error in refusing appellant's demurrer to the charge of burglary and submitting the issue of guilt or innocence of this crime to the jury, and in charging on the felony murder rule. We find no merit in either of these contentions.

At the close of the evidence, the defense argued to the trial judge that the Commonwealth had not brought forth sufficient evidence to warrant submission of the burglary charge to the jury. More specifically, it was argued the Commonwealth had failed to establish the entry into the apartment was made with felonious intent, a requisite of the crime of burglary, and since the evidence was insufficient to establish the commission of a burglary, there should be no charge to the jury on the felony murder rule. The trial judge refused to take the burglary issue away from the jury and proceeded to instruct the jury on the felony murder doctrine. The instruction was warranted.

The trial evidence was adequate to warrant the jury in finding that Brueckner and Reitelbach planned to kidnap Kline when they forced their way into his apart-

46

ment. If this were so, this would constitute a burglary. In short, it was a jury question and the fact that the jury rejected this theory of the Commonwealth's case does not, in itself, render the challanged instruction erroneous.

Judgments affirmed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.