364 A.2d 1335

**COMMONWEALTH of Pennsylvania**

v.

**Stanley HOSS, Appellant.**

Supreme Court of Pennsylvania.

Argued March 11, 1976.

Decided Oct. 8, 1976.

John J. Dean, John R. Cook, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

The incident from which this appeal arises represents one of the most odious and pernicious killings that has

occurred within this Commonwealth in recent years. The Commonwealth produced evidence at trial to establish that Stanley Hoss, then an inmate at the Western Pennsylvania State Correctional Institution at Pittsburgh, in concert with several other inmates lured the victim Walter Peterson, a captain of the correctional officers at the institution, into the basement recreation area of the prison and viciously murdered him. The testimony indicated that Captain Peterson was restrained while he was being punched, struck repeatedly with chairs about the head and slashed with razors to an extent that when other guards were able to gain entrance into the area, Peterson had been completely mutilated and "looked like a piece of raw meat." [1] The entire incident was witnessed by another guard who was in the observation area adjacent to the recreation area and separated by iron bars. [2] Death resulted from the multiple injuries of the scalp, face and upper neck area. The appellant was tried by jury and convicted of murder of the second degree and sentenced to life imprisonment of not less than ten years nor more than twenty years. This direct appeal followed.

The obligation of society to provide an accused a fair trial is tested to its fullest where the circumstances of the crime are as heinous and atrocious as those exhibited here. Appellant's only objections raise the question whether or not he did in fact receive a fair trial. After careful consideration of the record before us, we are of

1. It was testified that as the attackers struck Captain Peterson, they screamed, "The nigger is dead. Kill him, we'll kill them all."

2. This officer, Patrick Reilly, was unarmed and the only exit was through the recreation area and the door could only be unlocked from the recreation area side. The practice was to position an unarmed guard in this area while prisoners were exercising in the recreation portion during inclement weather. It was his responsibility to observe the activities of the prisoners and to set off the alarm if anything untoward occurred. After the prisoners were removed from the area and returned to their cells the door was unlocked by another member of the staff.

the view that he did and therefore affirm the judgment of sentence.

The first complaint is that the trial court abused its discretion in refusing defense motions for a change of venue. It is argued that because of the pretrial publicity, appellant was deprived of his right to a fair trial.

Under the laws of this Commonwealth it has been clearly established that the grant or refusal of a request to change venue rests within the sound discretion of the trial judge. *Commonwealth v. Powell,* 459 Pa. 253, 328 A.2d 507 (1974); *Commonwealth v. Martinolich,* 456 Pa. 136, 318 A.2d 680 (1974) (appeal dismissed, 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974)); *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974); *Commonwealth v. Hoss,* 445 Pa. 98, 283 A.2d 58 (1971);[3] *Commonwealth v. Swanson,* 432 Pa. 293, 248 A.2d 12 (1968), cert. denied, 394 U.S. 949, 89 S.Ct. 1287, 22 L.Ed.2d 483 (1969); *Commonwealth v. Richardson,* 392 Pa. 528, 140 A.2d 828 (1958). However, the exercise of this discretion must be examined in light of Art. I, § 9 of the Pennsylvania Constitution which provides that persons accused of crime are entitled to "a speedy public trial by an impartial jury of the vicinage." The guarantee of a right of trial by jury necessarily requires that the accused be afforded a trial before a panel of impartial and unbiased jurors.

> "Although this Court has said that the Fourteenth Amendment does not demand the use of jury trials in a State's criminal procedure, (citations omitted), every State has constitutionally provided trial by jury. (Citations omitted). In essence, the right to jury trial guarantees to the criminally accused a fair trial by a

---

**3.** This opinion refers to this appellant. It results from a conviction of murder of the first degree for the killing of a Verona Township, Allegheny County, policeman. It was as a result of these charges that appellant was confined in the Western Pennsylvania State Correctional Institution at the time of this incident.

panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. (Citations omitted). 'A fair trial in a fair tribunal is a basic requirement of due process.' (Citation omitted). In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as 'indifferent as he stands unsworne.' (Citation omitted). His verdict must be based upon the evidence developed at the trial. (Citation omitted). This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies." *Irvin v. Dowd,* 366 U. S. 717, 721–722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961).

█ The mandate for a fair and impartial jury does not require that the prospective jurors be free of all knowledge of the facts and circumstances surrounding the incident which forms the basis of the trial.

"It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 722–23, 81 S.Ct. at 1642.

Thus, the critical question where members of the panel have been exposed to pretrial media publicity, is whether

or not they are capable of casting aside any impressions or opinions they may have formed and render a verdict based solely upon the evidence presented to them during the course of the trial. In attempting to ascertain the presence of bias or prejudice, the United States Supreme Court has stated:

"Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." *Irvin v. Dowd, supra* at 724–725, 81 S.Ct. at 1643, quoting from *United States v. Wood,* 299 U.S. 123, 145, 146, 57 S.Ct. 177, 81 L.Ed. 78.

The general rule requires that the accused who claims that the denial of a request for a change of venue has denied him his right of a fair trial must demonstrate the prejudice that has been created by the failure to grant that request. See, *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Commonwealth v. Pierce,* 451 Pa. 190, 303 A.2d 209 (1973). There have, however, been certain circumstances where courts have relieved the accused of the responsibility of establishing a nexus between the pretrial publicity and actual jury prejudice and presumed the existence of prejudice. This has occurred in two distinct situations. First, where the pretrial media coverage is so extensive, so sustained, so pervasive and includes highly inflammatory and prejudicial information (rather than a factual account of the events reported) courts have determined that prejudice may be presumed. *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Commonwealth v. Pierce, supra.* The other instance where courts have presumed the existence of prejudice has been where it was determined that in addition to inflammatory pretrial publicity, the dignity and the objectivity of the court proceedings themselves have been dis-

rupted by the publicity. *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965).

"The proceedings in these cases were entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob." *Murphy v. Florida, supra,* 421 U.S. at 799, 95 S.Ct. at 2036.

It is clear, however, that this case does not fall within either category. First, the court preserved the integrity of the trial and there is no assertion that a "carnival air prevailed". Nor was the quantity or the quality of the media coverage in the instant case so pervasive and so prejudicial as to justify the conclusion that the community had been saturated with inflammatory information and thus was necessarily incapable of providing individuals who could render a fair and impartial verdict. Therefore, to resolve this particular claim we must turn to the totality of the circumstances and determine whether appellant has been able to establish identifiable prejudice as a result of the pretrial publicity. *Murphy v. Florida, supra; Irvin v. Dowd, supra.*

Immediately following the incident there was extensive coverage in newspaper, television and radio for a period of approximately ten days. The publicity characterized appellant as a convicted "cop killer", referring to the fact that he had been convicted for the murder of a Verona policeman in 1969 and also that he was implicated in the kidnapping and the apparent murder of a Maryland woman and her child.[4] The stories stressed the brutality of the instant assault and also contained statements by certain public officials condemning the viciousness of the crime and urging the reinstatement of the death penalty. Additional coverage resulted because

4. Charges were never brought against Mr. Hoss for this incident and the bodies of the woman and the child were never found.

of a strike of the guards at the penitentiary who demanded new procedures for handling inmates with severe behavior problems.

The coroner's inquest was held seven days after the incident and was covered by the media. The three defendants were filmed outside the hearing room dressed in prison garb and wearing handcuffs. Thereafter, the publicity subsided and no additional media attention was given to the matter until a little over a month later when there was a brief mention made of the fact that indictments had been handed down by the grand jury. Thereafter, no additional attention was given to appellant by the press until some three months later when the then newly appointed district attorney publicly stated that he intended to personally prosecute Mr. Hoss for this crime.

A primary source for ascertaining whether or not the jury selected was incapable of rendering a fair verdict as a result of the pretrial publicity is to be found from an examination of the record of the voir dire. In the instant case the fifth juror called was the first juror selected. The venireman acknowledged being aware of the pretrial publicity and also admitted that he had formed an opinion, but nevertheless, testified that he could set aside that opinion and return a verdict based solely on the evidence presented during the course of the trial. Appellant registered a challenge for cause and after it was denied by the trial court, the defense accepted this juror even though they possessed at that time 17 preemptory challenges.

It is significant to note that although appellant is challenging the denial of the request to change venue, he has not raised an objection in this appeal to the failure of the court to grant his challenge for cause. It is also of importance to recognize that in *Irvin v. Dowd, supra,* where the Supreme Court felt relief should be given, the Court was there concerned with instances where the accused had also challenged the jurors for cause, but were

forced to accept them because they had exhausted their preemptory challenges and possessed no other means to remedy their complaint. See also, *Rideau v. Louisiana, supra.* It is difficult to understand how a party can object to the acceptance of a juror where that party possessed preemptory challenges and failed to exercise them. Cf., *Commonwealth v. Shadduck,* 168 Pa.Super. 376, 77 A.2d 673 (1951).

With the exception of the first juror, the remaining eleven jurors and two alternates testified that they had formed no opinion. Several testified that they only had a vague recollection as a result of the pretrial publicity and two members testified either that they had not heard of the incident or if they had they could not recall what they had heard.

While it is true that the accused has a right to challenge a venireman's assertion of impartiality, to succeed in this challenge the party must be able to demonstrate from the record that the prospective juror did in fact have such an opinion that could not be readily set aside and would in fact influence and color his judgment.

"At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality' ". *Murphy v. Florida, supra,* 421 U.S. at 800, 95 S.Ct. at 2036.

In this transcript the only colorable claim of partiality of a juror was with reference to the first juror selected. An examination of this venireman's testimony fails to reveal any basis for disbelieving his statement that he could cast aside that opinion and decide the matter solely upon the evidence elicited during the trial.

Another factor to be considered in determining the effect of pretrial publicity upon the jury is the

length of time between the publicity and the commencement of the trial. See *Commonwealth v. Hoss, supra.* As has been indicated, the bulk of the publicity associated with the incident occurred within ten days of the event. Thereafter, there were singular references which were primarily factual in nature and not of the quality that would tend to prejudice or inflame a jury. The trial did not commence until approximately six months after the event. In *Commonwealth v. Hoss, supra,* we held that a time span of approximately five months between the publicity and the trial was sufficient to defuse the public outrage and dissipate any hostility toward the accused that may have been engendered by the publicity. See also, *Commonwealth v. Swanson, supra* (where a period of nine months transpired between the incident and the trial) ; *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A.2d 552 (1967) (where a period of seven months passed between the arrest and the trial).

Another factor to be considered is the degree of the saturation of the inflammatory and prejudicial publicity. Although it is conceded that immediately after the incident there was massive coverage of this event, nevertheless it continued for a period of only ten days. In contradistinction to the factual situation presented in *Irvin v. Dowd, supra,* where the rural county in which the trial occurred was inhabited by only approximately 30,000 people, this trial took place in the urban county of Allegheny which was inhabited by over 1,600,000 people. In this context, the trial court pertinently observed that the media coverage in this case was not as extensive nor as inflammatory as that which occurred in the prior case of this appellant, see *Commonwealth v. Hoss, supra.* In that case we also rejected a claim that the trial had been infected by pretrial publicity.[5]

5. In the first Hoss trial, 138 prospective jurors were questioned before a jury could be selected. In the instant trial, only 61 veniremen were examined in selecting the first 12 members of the jury. Further, this process was completed without the defense exhausting the peremptory challenges allotted.

206

Another consideration in this type of inquiry must be the measures taken by the trial judge to assure a fair trial. Here, the learned court permitted sufficient latitude during the voir dire examination to provide the defense with an ample opportunity to gauge the amount of exposure of each venireman to the publicity and to ascertain its possible effect upon him or her. Immediately upon their selection, the jurors were sequestered and thus isolated from any publicity that might have occurred during the trial. The trial court was also extremely liberal in his rulings on challenges for cause and the allowance of jurors to be excused by agreement. Additionally, approximately one month before the trial when the court was first assigned the cases arising out of this incident, he issued an order binding all counsel in an effort to abate further prejudicial publicity.[6]

6. Order of Court.
 IN THE COURT OF COMMON PLEAS
 Of Allegheny County, Pennsylvania
 Criminal Division

COMMONWEALTH OF PENNSYLVANIA, ⎤ No. 285 January
 Term, 1974
 v. ⎬ No. 280 January
 Term, 1974
STANLEY BARTON HOSS, DANIEL ⎟ No. 275 January
 DELKER, and GEORGE BUTLER. ⎦ Term, 1974

AND NOW, to-wit, this 6th day of May, 1974, the Court, after having been assigned to conduct the trial of Stanley Barton Hoss, Daniel Delker and George Butler on the above charge, and the Court recognizing the wide-spread publicity that has attended this case from the date of the alleged commission of the crime within this County and throughout this Commonwealth, and the Court, in the interest of preventing any and all persons from interfering with the rights of the accused to a fair trial, now ORDERS, ADJUDGES and DECREES that:

1. Any lawyer-associate with the prosecution or the defense of this case or any persons working under them are herewith enjoined from releasing or authorizing the release of any extra judicial statements, for dissemination, by any means of public communication relating to that matter and concerning:

(a) The prior criminal record, including arrests, indictments or other charges of crime, or the character or reputation of the accused;

Probably the most impressive fact demonstrating that Mr. Hoss received a fair trial by an impartial jury was the verdict that was returned by them. Although the Commonwealth presented impressive and overwhelming evidence of a willful, deliberate and premeditated killing, the jury saw fit to exercise its power of leniency, *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974), and returned a verdict of murder of the second degree.

Thus, after a review of this record, we are satisfied that the trial court did not abuse its discretion in refusing appellant's motion for change of venue.

 Appellant's second assignment of error was that the trial court erred in refusing a motion for a mistrial when the prosecutor made allegedly improper remarks in front of the jury. The record reflects the following:

"Q. Mr. Delker, would it surprise you to learn that Mr. Hoss has indicated to a psychiatrist in examination that he did participate in this—

MR. ZIMMERMAN: I object to that, Your Honor, and I make a motion for a mis-trial. That is absolutely prejudicial to the Defendant.

(b) The existence or contents of any confession or alleged confession, admission or statement given by the accused, or the refusal or failure of the accused to make any statement;

(c) The performance of any examinations or tests or the accuseds' refusal or failure to submit to any examination or test;

(d) The identity, testimony or credibility of any prospective witnesses;

(e) The possibility of a plea of guilty to the offense charged or a lesser offense; and

(f) Any opinion as to the accuseds' guilt or innocence or as to the merits of the case or evidence in the case.

This Order specifically applies to George H. Ross, the Public Defender, and specifically to his subordinates, including John J. Dean, Gary B. Zimmerman, and any other persons under his control and supervision. It is, likewise, to apply to John J. Hickton, District Attorney of Allegheny County, and any persons under his control or supervision.

BY THE COURT:
/s/ LEWIS,
*J.*

208

THE COURT: Strike it from the record, and the Jury is told to disregard that statement.

MR. ZIMMERMAN: I'd like to clarify something about that statement. I was present at the interview with the psychiatrist, and no such statement was made to anyone.

THE COURT: That question shouldn't have been asked. The motion for mis-trial refused. I want to again instruct the Jury to disregard it."

Appellant argues that the district attorney's question was fashioned to suggest to the jury that Mr. Hoss had admitted complicity to the psychiatrist when in fact no such admission had been made. This Court has emphatically condemned the practice of prosecutors attempting to distort the facts in an effort to mislead the jury to the prejudice of the defendant. *Commonwealth v. Revty,* 448 Pa. 512, 295 A.2d 300 (1972):

"More specifically, the District Attorney must limit his statements to the facts in evidence and legitimate inferences therefrom. *Commonwealth v. Meyers,* supra; *Commonwealth v. Hoffman,* 439 Pa. 348, 266 A. 2d 726 (1970). The ABA Standards Relating to the Prosecution Function state: 'It is unprofessional conduct for the prosecutor to [intentionally] misstate the evidence or mislead the jury as to the inferences it may draw . . .' ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution and Defense Function § 5.8a (Prosecution Function) (Approved Draft 1970) at 126–128." *Id.* at 516–517, 295 A.2d at 302.

Fortunately, defense counsel was alert and prevented the question from being completed. Appellee seeks to take advantage of this circumstance by arguing in its brief:

". . . the prosecutor's question does not amount to an unequivocal implication of the appellant in the

murder. Upon close analysis, the question seems to be almost hypothetical in nature, with the words 'would it surprise you to learn' taking on a special significance. The prosecutor never specifically states that Hoss made a statement to a psychiatrist. Instead, it seems that he is asking whether the witness *would* be surprised if such a statement was made. This is not an attempt to evade the crux of the matter by an exercise in semantics."

We find this reasoning to be far from impressive. The undisputed fact remains that there was nothing in this record to support the conclusion that appellant had in any way incriminated himself during his discussions with the psychiatrist. Therefore, the interjection of this concept, even accepting the view of appellee that it was by way of the hypothetical, was nonetheless unjustified and thus improper. However, the crucial question remains: Did this improper remark require the grant of the defense motion for a mistrial? Restated, the issue presented is whether the action taken by the trial court was sufficient to remove the potential prejudice of the improper remark thereby eliminating the necessity for declaring a mistrial.

In some instances this Court has been required to grant a new trial because of the prosecutorial misconduct where the trial judge had made little, if any, effort to curb the offensive conduct and to negate its effect. *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A.2d 205 (1974); *Commonwealth v. Toth,* 455 Pa. 154, 314 A.2d 275 (1974); *Commonwealth v. Revty, supra.* In other cases the extent of the prosecutor's misconduct was so inflammatory or prejudicial that we found that the admonishments of the trial court were inadequate to dissipate the taint created by the conduct. *Commonwealth v. Collins,* 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Russell,* 456 Pa. 559, 322 A.2d 127 (1974); *Commonwealth v. Potter,* 445 Pa. 284, 285 A.2d 492 (1971).

In other instances, however, we found that a new trial was not necessary either because the impact of the prosecutorial conduct was not sufficient to have tainted the verdict, *Commonwealth v. Carlos,* 462 Pa. 262, 341 A.2d 71 (1975); *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Riley,* 459 Pa. 35, 326 A.2d 400 (1974); *Commonwealth v. Hoffman,* 439 Pa. 348, 266 A.2d 726 (1970); *Commonwealth v. Gordon,* 431 Pa. 512, 246 A.2d 325 (1968), or the action of the trial court was sufficient to have cured any prejudice that may have resulted from the improper conduct. *Commonwealth v. Martinolich,* 456 Pa. 136, 318 A.2d 680 (1974); *Commonwealth v. Dickerson,* 406 Pa. 102, 176 A.2d 421 (1962):

> But even where the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. *Commonwealth v. Crittenton,* 326 Pa. 25, 31, 191 A. 358 (1937); *Commonwealth v. McHugh,* 187 Pa.Super. 568, 577, 145 A.2d 896 (1958). The language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Simon,* 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). See also *Commonwealth v. Myers,* 290 Pa. 573, 139 A. 374 (1927). The effect of such remarks depends upon the atmosphere of the trial, *Commonwealth v. Dickerson,* 406 Pa. 102, 110, 176 A.2d 421 (1962); *Commonwealth v. Del Giorno,* 303 Pa. 509, 519, 154 A. 786 (1931), and the proper action to be taken is within the discretion of the trial court. *Commonwealth v. Silvis,* 445 Pa. 235, 237, 284 A.2d 740 (1971); *Commonwealth v. Simon, supra.*
>
> *Commonwealth v. Stoltzfus, supra,* 462 Pa. at 61, 337 A.2d at 882.

The challenged remark in the instant case was an isolated one. It was immediately objected to and that

objection was sustained and the jury instructed to disregard the statement. Equally as important, defense counsel was permitted to state before the jury that there was, in fact, no basis for the suggestion that appellant had made any admissions during the discussions with the psychiatrist. In view of all of these circumstances, we are satisfied that the trial judge did not abuse his discretion in denying the motion for a mistrial and that the remark does not now warrant a grant of a new trial.

Judgment of sentence affirmed.

ROBERTS, J., filed a concurring opinion in which POMEROY and MANDERINO, JJ., joined.

EAGEN, J., concurs in the result.

ROBERTS, Justice.

I agree with the majority that appellant was not entitled to a change of venue. However, in affirming the trial court's denial of appellant's motion for change of venue, the majority relies on appellant's failure to exhaust his peremptory challenges during voir dire. The majority also attempts to support its conclusion by looking to the jury's verdict of murder of the second degree. I am unable to accept the majority's reliance on these two factors as proper grounds for affirming the trial court's ruling.

In *Commonwealth v. Dobrolenski,* 460 Pa. 630, 636–37, 334 A.2d 268, 271 (1975), this Court adopted the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press § 3.2 (Approved Draft, 1968) which provides in pertinent part:

"(e) . . . The claim that the venue should have been changed . . . shall not be considered waived by . . . the failure to exercise all peremptory challenges."

As the comments to § 3.2 point out, defense counsel is put in an untenable position if his or her failure to ex-

haust peremptory challenges is considered determinative in reviewing a motion for change of venue.

> "Knowing conditions in the community, he may be more inclined to accept a particular juror, even one who has expressed an opinion, than to take his chances with other less desirable jurors who may be waiting in the wings. And yet to make a record for appellate review, he must object as much as possible and use up his peremptory challenges as well. This dilemma seems both unnecessary and undesirable. . . .

> "[Subsection (e)] provides that the right to a . . . transfer shall not be deemed to have been waived . . . by failure to exhaust all peremptory challenges. . . . If the defendant has satisfied the criterion for granting of relief, it should not matter that he . . . has failed to use his peremptory challenges, perhaps because he prefers the ills he has to others he has not yet seen."

*Commonwealth v. Dobrolenski, supra,* at 637–38, 334 A. 2d at 271–72, quoting the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press § 3.2, Comments at 127–28 (Approved Draft, 1968).

Here, appellant accepted the fifth venireman as the first juror despite the juror's statement that he was aware of prejudicial pretrial publicity and had formed an opinion.* As the ABA Standards suggest, appellant might have determined that, although this juror was not ideal, he should save his peremptory challenges for future potential jurors who might be even more prejudiced.

---

* When asked whether he could lay the opinion aside and render a verdict based solely on the evidence presented in court the juror stated that he thought he could. Defense counsel challenged the juror for cause, which the court refused. Defense counsel did not use a peremptory challenge to disqualify the juror. As counsel did not appeal the denial of his challenge for cause, I do not reach the merits of the trial court's ruling.

The majority errs in penalizing appellant for making this decision.

The majority also states that:

"Probably the most impressive fact demonstrating that Mr. Hoss received a fair trial by an impartial jury was the verdict that was returned by them. Although the Commonwealth presented impressive and overwhelming evidence of a willful, deliberate and premeditated killing, the jury saw fit to exercise its power of leniency . . . and returned a verdict of murder of the second degree." (Citation omitted.)

The factors which influence a jury's verdict are highly speculative because of the secrecy of the deliberations. The secrecy of jury deliberations prevents reliable interpretation of the jury's verdict. Therefore, the jury verdict cannot be considered in determining whether appellant was entitled to a change of venue. The majority, by engaging in this unnecessary and improper speculation, indulges in a procedure which this Court has never previously condoned or suggested.

I concur in the result because the publicity was not so "inherently prejudicial" as to deny appellant the possibility of a fair trial. Compare *Rideau v. Louisiana,* 373 U. S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) ; *Commonwealth v. Pierce,* 451 Pa. 190, 303 A.2d 209 (1973). Moreover, the delay of approximately six months between the publicity and the trial was sufficient to dissipate whatever potential prejudice the publicity may have had. See *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Nahodil,* 462 Pa. 301, 341 A.2d 91 (1975); *Commonwealth v. Dobrolenski,* 460 Pa. 630, 334 A.2d 268 (1975) ; *Commonwealth v. Hoss,* 445 Pa. 98, 283 A.2d 58 (1971).

POMEROY and MANDERINO, JJ., join in this concurring opinion.