392 A.2d 875

**COMMONWEALTH of Pennsylvania**

v.

**Larry HOWARD, Appellant.**

Superior Court of Pennsylvania.

Argued March 24, 1977.

Decided Oct. 20, 1978.

Marilyn J. Gelb, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, submitted a brief for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

The appellant Larry Howard, was indicted in Philadelphia County on the following charges:

No. 804 June Sessions 1972—assault and battery, aggravated assault and battery and assault with intent to kill;

No. 805 June Sessions 1972—assault and battery upon a police officer;

No. 806 June Sessions 1972—receiving stolen goods; and

No. 807 June Sessions 1972—carrying a firearm upon a public street without a license.

The charges arose out of an incident involving the shooting of a Philadelphia police officer on the evening of May 30, 1972.

Prior to his trial on the charges, defendant, represented by privately retained counsel, filed a motion to suppress identification and physical evidence, as well as statements made to police during interrogations. After hearings on the motion, only certain line-up identification evidence was suppressed. Appellant was tried on the charges and a jury found him

guilty of assault with intent to kill, aggravated assault and battery on a police officer, and the weapons charge. Subsequently, pro forma post-trial motions were filed, challenging the sufficiency of the evidence and propriety of the sentence. At trial and on post-trial motions, appellant was represented by the same privately retained attorney who had represented him on pre-trial motions. Following the denial of post-trial motions, appellant was sentenced.

No direct appeal was ever filed. Subsequently, appellant filed a pro se appeal under the Post Conviction Hearing Act (PCHA),[1] alleging several claims of ineffective representation by counsel, including counsel's failure to appeal from the judgment of sentence. New counsel was appointed to assist appellant and a hearing was held on the petition. The PCHA court found that appellant had been denied his right of direct appeal and granted him the right to file such an appeal nunc pro tunc. Other issues, in such circumstances were not resolved by the PCHA court. See *Commonwealth v. Drummond,* 238 Pa.Super. 311, 357 A.2d 600 (1976).

■ On appeal, several claims of trial court error are raised. Each is coupled with an argument that trial counsel was not effective as a result of his failure to include such arguments in post-trial motions. While the failure to include an issue in post-trial motions would ordinarily operate as a waiver of such issue for purposes of appellate review,[2] the claim that counsel was not effective in not raising such issue in the lower court may vitiate the waiver. In situations like the instant one, our scope of review has been clearly established. In *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), our Supreme Court stated:

> The initial factor which must be considered . . . is whether the claim which post-trial counsel is charged with not pursuing had some reasonable basis. [We have noted that] "a finding of ineffectiveness could never be made

1. Act of January 25, 1966, P.L. (1965) 1580, § 1 et seq., 19 P.S. § 1180–1 et seq.

2. See *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

unless we concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized." Because counsel does not forego an alternative which offers a substantially greater potential for success when he fails to assert a baseless claim, counsel cannot be found to have been ineffective for failing to make such an assertion. It is only when the claim which was foregone was of arguable merit that we must make an inquiry into the basis for the post-trial counsel's decision not to pursue the matter. Thus the starting point of our inquiry is whether there were reasonable grounds upon which to advance the two claims which were not advanced in the motion for a new trial.

We emphasize that our analysis of the abandoned claim is undertaken solely for the purpose of resolving questions of ineffective representation. Not having been raised in post-trial motions, the claim itself has not been properly preserved for appellate review. Rather, once we conclude that the omitted contention is of arguable merit, our inquiry into the substance of the claim ceases and shifts to an analysis of post-trial counsel's basis for decision. If it cannot be determined from the record whether a satisfactory basis for the omission exists then a remand for an evidentiary hearing on that question is proper. If, on the other hand, we can determine from the record that counsel was ineffective then the appropriate remedy would be to grant appellant the right to file post-trial motions nunc pro tunc. We do not decide the issue which counsel was ineffective in failing to preserve. 472 Pa. at 277–279, 372 A.2d at 695–696 (Citations omitted)

Thus, as an initial step in the instant case, we must now proceed to determine whether the substantive issues raised by appellant are of arguable merit.

*I.   Suppression of Statements Given to Police.*

Appellant raises several arguments relative to the use at trial of pretrial statements which he furnished to police during a period of interrogation which began shortly

after his arrest. Trial counsel unsuccessfully moved to suppress these statements prior to trial, but did not renew defense efforts against these statements in post-trial motions. An analysis of appellant's argument, in this regard, requires a review of the record facts available to the lower court concerning the inculpatory statements obtained by authorities from appellant following his arrest.[3]

The record discloses the following facts: Following the shooting of a Philadelphia police officer on the evening of May 30, 1972, police cordoned off portions of the surrounding area and began a massive hunt for the individuals purportedly involved in the attack. At 7:20 A.M. on May 31, 1972, appellant was taken into custody as he waited at a bus stop in the area. He had been reported to police by a person at a nearby industrial facility who had seen him try to enter the rear of the facility. The appellant fit the description of one of the assailants, was covered with mud and had a cut on his hand. He was placed under arrest and transported to the Police Administration Building, where he arrived at about 8:00 A.M.

Appellant was taken to a small interrogation room in the building which contained a chair, bolted to the floor. The chair was equipped with handcuffs. The room also contained a table and seating for officers. At 8:30 A.M., appellant was advised of his rights (*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) and waived his right to counsel. He was interrogated by two officers and later by a third officer until 9:55 A.M., except for an 8 minute interval during which appellant was taken out of the room for fingerprinting, and another interval of 14 minutes when he was photographed and given a drink. During this initial period of interrogation, appellant gave an exculpatory statement.

From 9:55 A.M. until 11:00 A.M., appellant was left alone in the room and was provided with food. Interrogation was

**3.** In the present contexts, we consider the prosecution evidence and uncontradicted defense evidence. *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968).

resumed by two officers from 11:00 A.M. until 11:40 A.M., and at the latter time appellant's clothing was taken for chemical analysis and he was issued another shirt, pants, and shoes. Appellant was left alone from 11:53 A.M. until 12:15 P.M., when interrogation began again, by two officers. As interrogation continued, at approximately 1:15 P.M. appellant began to narrate another statement in which he admitted being in the area on the prior evening when the officer was shot, and further related his efforts to avoid apprehension by police. This statement was written by officers, but not read to or by appellant, nor signed by him. The interrogation continued until 2:50 P.M. After being left alone for twenty (20) minutes, interrogation was begun again at 3:10 P.M. by two officers. Such questioning continued until about 4:45 P.M., with substitutions among officers at different times. No additional admissions were made by appellant. At 4:45 P.M., pursuant to a warrant, officers obtained hair and nail scraping samples from the appellant, and he was given ten minutes to eat some food which was brought to him.

At 5:00 P.M., interrogation resumed and continued for 5¾ hours until 10:45 P.M. During this time, questioning was interrupted for only two brief periods for food and appellant's use of bathroom facilities. Such matters consumed a total of twenty (20) minutes. During this period of interrogation, at approximately 9:00 P.M., appellant began to change his story. None of the three officers present had been in the room the previous morning, so they again advised appellant of his *Miranda* rights, and they were again waived by appellant. At this time (about 9:10 P.M.) he admitting hiding weapons near the scene of the shooting, traveling in the area with another person (whom police told him had given statements implicating him and another in the shooting), hearing the shots which struck the officer, and hiding in foliage to avoid police. Appellant read a statement of these admissions, prepared by one of the interviewing officers, and signed his name to it.

No interrogation took place between 10:45 P.M. and 11:10 P.M., but at the latter time questioning was resumed until

12:05 A.M. on June 1, 1972. The appellant was then left alone for forty (40) minutes, when he was again questioned from 12:45 A.M. until 1:00 A.M. Further questioning occurred from 1:35 A.M. to 2:00 A.M., and was halted to permit further photographing of appellant. Subsequent periods of questioning took place from 2:40 A.M. to 3:00 A.M., from 4:00 A.M. to 4:40 A.M., from 6:15 A.M. to 7:00 A.M., and finally from 8:30 A.M. to 9:30 A.M. During this time from 5:40 A.M. to 6:15 A.M. food was furnished to appellant and he was permitted to use the bathroom. Also, throughout these periods, appellant signed a written copy of one of the interviews and signed a handwriting exemplar for the officers. No further questioning took place before appellant was "slated", at 10:10 A.M. and was given a preliminary arraignment shortly after that time.

On appeal, it is claimed that the statements by appellant were coerced, and further that they were improperly admitted in violation of former Rule of Criminal Procedure 118[4] (presently Rule 130) and the exclusionary rule enunciated in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). We are constrained to find arguable merit in such contentions, in view of the length and circumstances of the interrogations involved as well as the delay between arrest and arraignment.

While we do not hold that the appellant's statements were coerced in the instant case, we cannot ignore the decisions in past cases, such as *Commonwealth v. Riggins*, 451 Pa. 519, 304 A.2d 473 (1973), *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973), where somewhat analogous periods of interrogation were held to have created coercive circumstances vitiating the admission of confessions at trial. The analogy of such cases to the instant case creates the initial conclusion that appellant's arguments on coerced confession were of arguable merit. We reach the same conclusion with

4. That Rule provided, *inter alia*:

   When a defendant has been arrested without a warrant, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him.

   (a) If the complaint charges a court case, the defendant shall be given an immediate preliminary arraignment.

respect to contentions of excessive delay between arrest and arraignment. In *Commonwealth v. Futch, supra,* the Pennsylvania Supreme Court decided for the first time in our Commonwealth that all evidence obtained during an unnecessary delay between arrest and arraignment, except that evidence unrelated to the delay, would be inadmissable in a subsequent criminal trial. The *Futch* rule, based upon then Criminal Rule 118, has been held applicable to cases tried before the date of its decision. *Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975)[5]. Both the *Futch* case and it progeny[6] give us cause to find arguable merit in appellant's excessive delay claims.

The reasons for counsel's decision not to pursue these issues are not clear in the record before us so we must remand for an evidentiary hearing on the question of whether counsel was ineffective in failing to raise such claims in post-trial motions. The lower court's field of inquiry, in this regard, as well as the standards for review,[7] are clearly set forth in *Commonwealth v. Hubbard, supra,* and repetition of them here for guidance is not necessary.

## II. Failure to Object to Testimony on Defendant's Statement.

During the course of the trial, a police officer testified to the statements made by appellant during the course of interrogation. *Inter alia,* he related the following questions and answers:

5. The Court in the *Mitchell* case, when faced with circumstances similar to the instant case, found that the unnecessary delay issue had been waived in that it was not included in post-trial motions. However, the appellant in *Mitchell,* unlike the appellant in the instant case, raised no ineffective counsel claim.

6. See cases cited in *Commonwealth v. Mitchell, supra,* at footnote 2 of that Opinion.

7. The well recognized standard for determining whether post-trial counsel was ineffective, was stated in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967):

"Counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests."

Q. (Officer): "Why was (sic) you running from the car that the police stopped?"

A. (Appellant): "I don't want to tell you that".

Q. : "Who was with you in the car when police stopped you?"

A. : "I don't want to incriminate anyone else."

Defense counsel made no objection to this testimony and did not include it as an issue in post-trial motions. Appellant now contends that counsel was ineffective in not preserving what appellant claims constituted a clear violation of his rights under *Miranda v. Arizona, supra.*[8] We cannot agree.

The *Miranda* decision, and subsequent decisions have clearly established that the exercise of one's right to remain silent during police interrogation may not be used against him in a subsequent criminal proceeding. *Commonwealth v. Haideman,* 449 Pa. 367, 296 A.2d 765 (1972). The harm which we seek to prevent is that some adverse inference may arise in the minds of triers of fact if they know that an accused remained mute in the face of accusatory questioning. Most lay persons would view silence, in such a setting, as an admission of guilt. *Commonwealth v. Haideman,* 449 Pa. at 371, 296 A.2d at 767. Quite simply, in the instant circumstances, we see no possibility of such prejudice to the appellant from the two questions and responses related above. The appellant answered many police questions and his inculpatory responses were made known to the jury. These statements and all of the other evidence against the appellant established a strong case for the prosecution. There was no question at all about appellant being at the scene of the shooting with other persons involved in the incident, and fleeing the scene at the time of the shots. His refusal to say either why he ran from the scene and who he was with, in response to the questions stated above, did not materially assist the prosecution against him, or create any

---

**8.** Our analysis of this issue may well be a fruitless exercise if appellant's claims concerning the admissability of the statements, as discussed under Section I of this Opinion, and associated ineffective counsel argument are found to be meritorious by the lower court upon remand.

possible inference in the minds of the jurors beyond the scope of what had already been abundantly shown by other evidence.

Appellant points out that the right not to have one's silence used against him does not depend upon whether the right is asserted at the beginning of interrogation or later on. See *Commonwealth v. Dulaney*, 449 Pa. 45, 295 A.2d 328 (1972); *Commonwealth v. Greco*, 227 Pa.Super. 19, 323 A.2d 132 (1974). While this is correct, and while we recognize that a waiver of the right to remain silent may be withdrawn, and the right asserted (See *Miranda, supra, Commonwealth v. Dulaney, supra*), in the limited circumstances of the instant case, where appellant, at most, engaged in a highly "selective" exercise of his right to not answer two questions on which other evidence was presented, we can discern no violation of such principles, nor prejudice to appellant.

In view of our conclusion that this contention of appellant is lacking in merit, it is evident that counsel was not ineffective in failing to preserve the issue in post-trial motions. Of course, a claim of ineffectiveness may not be supported on the ground that counsel failed to pursue a fruitless effort. See *Commonwealth v. Hubbard, supra; Commonwealth v. Mack*, 451 Pa. 319, 304 A.2d 93 (1973). Thus, there is no basis to find that trial and post-trial counsel was ineffective in failing to raise the *Miranda* argument.

### III. *Illegal Sentences*

The appellant also contends that the imposition of consecutive sentences of seven (7) years on Bill No. 804 and five (5) years on Bill No. 805 constituted double punishment for the same offense in violation of the constitutional provision against double jeopardy. He also argues that post-trial counsel was ineffective in not raising this claim in the lower court. At the outset, we note that the sentencing in this case, as was proper, took place after the consideration of post-trial motions. Also, at the date of sentencing in the instant case, in 1973, no requirement existed that an illegal

sentence claim be initially raised before the lower court. See *Commonwealth v. Brunner*, 243 Pa.Super. 55, 364 A.2d 446 (1976). Thus, we find no basis for concluding that counsel was ineffective in the instant case for failing to raise such a challenge after sentencing in 1973. Under present procedure, however, the appropriate initial challenge to the legality of a sentence is by petition to the sentencing court, asking that sentence be vacated and a legal sentence be imposed. *Commonwealth v. Brunner, supra.* As this case is to be remanded to the lower court for other reasons (see discussion under Section I above), it is both preferable and expedient to allow that court to also, in the same proceeding, initially review the appellant's sentence claims. Such a disposition will comport with the established policy of having our lower courts consider such matters prior to appellate review. *Commonwealth v. Brunner, supra.* Thus, in the circumstances of the instant case, we will remand the appellant's sentence claims for initial consideration before the lower court.

Judgment of sentence vacated and case remanded for proceedings consistent with this Opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.