422 A.2d 1126

COMMONWEALTH of Pennsylvania

v.

Thomas C. REIDENBAUGH, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 16, 1979.

Filed Nov. 21, 1980.

302

304

Paul Bogdon, Pittsburgh, for appellant.

Charles W. Johns, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, President Judge, and MONTGOMERY and LIPEZ, JJ.

MONTGOMERY, Judge:

The procedural history of this direct appeal from a judgment of sentence is somewhat complicated. The Appellant, Thomas C. Reidenbaugh, was indicted on several charges, including rape, arising out of an incident which involved an alleged attack on two females by Appellant and three companions, including his brother, Charles Reidenbaugh. Appellant and his brother entered pleas of not guilty and were tried together before a jury. The Appellant was represented at trial by an attorney from the office of the Allegheny County Public Defender. After a guilty verdict, Appellant's trial counsel filed timely post–trial motions for new trial and in arrest of judgment. Such motions were denied by the court and the Appellant was thereafter sentenced to undergo a term of imprisonment of from three and one–half (3½) to seven (7) years on the rape count. Sentence was suspended as to the remaining counts.

Appellant, still represented by the office of the Public Defender of Allegheny County, filed a timely direct appeal to our Court in November, 1975. We affirmed the conviction by an Order filed on February 2, 1977. See *Commonwealth v. Reidenbaugh*, 245 Pa.Super. 612, 372 A.2d 428 (1977).

The Appellant, still represented by the Public Defender, filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court in early March, 1977. In April, 1977, Appellant filed a petition with the Supreme Court seeking leave to withdraw his Petition for Allowance of Appeal to permit him to examine the original record in order to file an amended Petition for Allowance of Appeal. He also apparently rejected further representation by the Allegheny

County Public Defender. In August, 1977, the Supreme Court granted Appellant's petition.

In September, 1977, the Appellant filed a *pro se* Petition for Allowance of Appeal in the Supreme Court raising claims of ineffective assistance of counsel at trial and on appeal. On April 7, 1978, the Supreme Court issued the following *Per Curiam* Order:

> "Petition for allowance of appeal granted. Order of the Superior Court affirming the judgment of sentence is vacated and the case is remanded to the Superior Court for another appeal on the merits from the judgment of sentence entered by the Court of Common Pleas of Allegheny County."

Thus, the Appellant's case is again before our Court.

The Appellant's brother and co–defendant, Charles Reidenbaugh, had earlier followed a similar procedural pattern in his appeal after his conviction and sentencing in the lower court. The Pennsylvania Supreme Court had issued a virtually identical remand Order in the brother's case one year prior to the issuance of the above–quoted Order in the Appellant's case. Our Court thereafter reviewed the Supreme Court's remand order in the second appeal of Charles Reidenbaugh, and a majority of the Court construed the Supreme Court's order to mean that some merit was found in Charles Reidenbaugh's claim of ineffectiveness of his initial appellate counsel. See Judge Spaeth's Majority Opinion in *Commonwealth v. Reidenbaugh*, 266 Pa.Super. 315, 404 A.2d 697 (1978). Therefore, we found that all issues raised on the second appeal were properly before our Court. The same conclusion is mandated in this case.

Several of the Appellant's arguments on this appeal are based upon claims of ineffective assistance of counsel at trial. It is appropriate to state several well–recognized principles applicable in our review of such claims. It is clear that the effectiveness of trial counsel must be raised in the first proceeding in which the defendant is represented by counsel other than the one whose stewardship is challenged.

*Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975); *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975). The Appellant has followed that procedural requirement in this case. In reviewing his claims, our Court will be guided by the standard that defense counsel's assistance is to be deemed effective if we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate the client's interests. See *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 559, 604, 235 A.2d 349, 352 (1967). The test is not whether alternatives were available which were more reasonable, upon a hindsight evaluation of the record. Rather, the balance tips in favor of a finding of effectiveness if it is determined that trial counsel's decisions had any reasonable basis. *Commonwealth ex rel. Washington v. Maroney, id.* If the record is insufficient to permit us to discern the particular basis for counsel's decision on any matter challenged as ineffective on a later appeal by the defendant, we must vacate the judgment of sentence and remand for an evidentiary hearing in the lower court. *Commonwealth v. Twiggs, supra.*[1] That was the procedure which we followed in dealing with the ineffective counsel arguments raised by Appellant's brother, Charles, in his second appeal to our Court. See *Commonwealth v. Reidenbaugh*, 266 Pa.Super. 315, 404 A.2d 697 (1978).[2]

With these concepts in mind, we will now address the substantive contentions raised by the Appellant on this appeal. He first urges that his trial counsel was ineffective in failing to take action to erase prejudice which purportedly occurred when his brother's attorney, at their joint trial, disclosed to the jury, through direct examination that the

---

1. If the lower court, after such a remand, concluded that counsel was ineffective, a new trial would be awarded. If, however, the assistance of trial counsel was determined not to be ineffective, the judgment of sentence would be reinstated. Following such a decision, an appeal could be taken again to our Court. *Commonwealth v. Twiggs, supra.*

2. An application for allocatur was refused by the Supreme Court in that case by order dated November 27, 1978.

brother had a prior conviction for a sex offense involving a young girl. Appellant also argues that his attorney was ineffective in failing to preserve this issue for appeal.[3]

The Appellant argues that while the information which was disclosed only related to his brother, it also tainted him. He reasons that the charges against both him and his brother arose from the same factual situation and the close relationships between the brothers was continually apparent to the jury. Upon our review of the record with respect to this issue, we can speculate that Appellant's defense counsel may have failed to object for several strategic reasons. First, while the testimony may have been prejudicial to his brother's interests, it is not clear that any legally cognizable prejudice resulted to Appellant as a result of the testimony. A strenuous objection arguing prejudice may have unnecessarily implanted in the juror's minds the idea that there was a connection between the brother's record and Appellant's truthfulness or even criminal propensities. Counsel may have also concluded that the admission of prior crimes by the brother would make his co–defendant, the Appellant, appear more law abiding, as no such evidence of prior crimes would be introduced as to him. In the appeal of Charles Reidenbaugh, our Court recognized the possibility that his attorney may have asked the questions now in issue to give the jury the impression that his client was completely truthful–even to the point of admitting prior crimes. Appellant's counsel may have also believed that the challenged colloquy had the same beneficial effect.

While we have expressed several possible strategic grounds upon which Appellant's counsel may have relied, in

---

**3.** In the appeal by Appellant's brother, it was argued that his defense counsel was ineffective for asking the questions which elicited the information concerning prior crimes. In Charles Reidenbaugh's case, our Court concluded that information regarding his conviction record could not have been introduced by the Commonwealth. See *Commonwealth v. Reidenbaugh*, 266 Pa.Super. at 321, 404 A.2d at 700. The Commonwealth concedes that point in this case. Nevertheless, our Court recognized the potential that Charles Reidenbaugh's counsel may have had some reasonable strategic basis for his actions, and remanded for a hearing on the issue in the lower court.

not raising an objection, the present record does not provide sufficient information for us to reach a determination as to counsel's specific reasons for not objecting. Therefore, in accordance with the procedure enunciated in *Commonwealth v. Twiggs, supra*, we will remand this matter to the lower court for a hearing on this issue of ineffectiveness.

It is appropriate to note that this disposition necessarily implies the premise that the disclosure of Charles Reidenbaugh's prior criminal record to the jurors was not prejudicial *per se* to the Appellant. In every case where a claim of ineffective counsel requires an evaluation of defense counsel's strategy by the court, it is possible that the particular course chosen may have involved possible prejudice to the appellant. A criminal defendant under our system of justice is entitled to a fair trial, but not necessarily a perfect one. Thus, the defendant is bound by the *reasonable* strategy employed by his counsel in his defense. See *Commonwealth ex rel. Washington v. Maroney, supra, Commonwealth ex rel. LaRue v. Rundle*, 417 Pa. 383, 207 A.2d 829 (1965). In the instant appeal the Appellant's arguments of ineffectiveness presume the fact that the introduction of the evidence of prior crimes by his brother and co–defendant was prejudicial. The Commonwealth argued in the appeal of Charles Reidenbaugh that even if the introduction of such evidence was in error, it was not prejudicial so as to require reversal. See *Commonwealth v. Reidenbaugh*, 266 Pa.Super. at 321–324, 404 A.2d at 700–701. Our Court found it appropriate, in remanding the case to allow the lower court to evaluate all of the factors involved, including the argument of a lack of prejudice. We believe the same factors would require consideration in the instant case and direct the lower court's attention to our Opinion in the earlier case for guidance.

The Appellant next argues that the lower court improperly sustained an objection by the prosecution to a question asked by his co–defendant's counsel in an effort to rehabilitate a witness. Further, he claims that he was denied the effective assistance of counsel when his own attorney failed to preserve the issue for appeal.

The record shows that prior to the scheduled trial of Appellant and his brother, a third person accused in the same criminal episode, Dennis R. Shultzaberger, pleaded guilty to two counts of a five count indictment and was sentenced on the charges pursuant to a plea bargain with the Commonwealth. At the trial of the Appellant and his brother, Shultzaberger was called as a defense witness. He testified, consonant with the other defense testimony, that neither of the Reidenbaugh brothers engaged in sexual intercourse with either of the alleged victims. He further stated that he had engaged in sexual intercourse with the older woman, but that such relations were consensual on her part. On cross-examination, the attorney for the Commonwealth, over defense objection by Appellant's brother's counsel, was permitted to ask questions which resulted in Shultzaberger agreeing he had admitted raping the older victim. On redirect examination, defense counsel asked:

"Was the reason that you pled guilty due to the fact that you made a deal . . . . with the District Attorney?"

The trial judge sustained a prosecution objection to the question.

The record does not reveal the specific basis for the objection by the prosecution as the Commonwealth's attorney merely stated, "Objection". The trial judge, in sustaining the objection, stated only that the question was improper and was to be disregarded by the jurors. It certainly appears that the question was objectionable as a leading question, which has been defined as a question so framed as to indicate or suggest the answer desired. See *Brown v. Shirks Motor Express*, 393 Pa. 367, 143 A.2d 374 (1958). It is well settled that the extent to which a court will tolerate leading questions, or otherwise control the inquiry of a witness, is within the trial judge's discretion, and in the absence of a clear abuse of that discretion, we will not find reversible error. *Commonwealth v. Gockley*, 411 Pa. 437, 192 A.2d 693 (1963). Since the question was obviously leading, we cannot say that the trial court erred in excluding it. A correct decision will be sustained on appeal

if it can be sustained for any reason whatsoever, even if the lower court offered an *erroneous* reason to support its action. *Ridley Township v. Pronesti*, 431 Pa. 34, 244 A.2d 719 (1968); *Sherwood v. Elgart*, 383 Pa. 110, 117 A.2d 899 (1955). In the instant case, we believe that the lower court's action in sustaining the objection was proper because the question, as posed, was leading. In these circumstances, we cannot agree with the Appellant that his attorney was ineffective for not challenging that evidentiary ruling on appeal. Counsel may not be deemed ineffective for failing to do a fruitless act. *Commonwealth v. Yarbough*, 248 Pa.Super. 356, 375 A.2d 135 (1977).

We find a second reason for rejecting Appellant's claim that his attorney was ineffective for failing to raise a claim on appeal regarding the question posed to Shultzaberger. We believe that even if the ruling were determined to be erroneous, it could not be deemed to have constituted sufficient ground for reversal. The Appellant argues that if Shultzaberger were permitted to answer the question, he would have rehabilitated his earlier testimony and would have reduced the impact of the inconsistency in his testimony brought out on cross–examination. We cannot agree that Shultzaberger's response would have necessarily had a rehabilitative effect. We will assume that Shultzaberger would have testified he was innocent of the charges, but chose to plead guilty, with hopes of a light sentence, and in order to avoid the risk of conviction on a five–count indictment. Such testimony, while *possibly* rehabilitative, also would have necessarily furnished additional grounds upon which the jurors could discredit that witness. By so testifying, Shultzaberger would have depicted himself as a person who made a "deal" with the prosecutor, only to refute his guilty plea and presumably dishonor the "deal" soon thereafter. One could not assume that the prosecutor would have agreed to such a plea arrangement with the knowledge that Shultzaberger was going to turn the tables, refute his declaration of guilt, and testify as he did for the defense in the Reidenbaugh case. In view of the obvious negative aspects

of Shultzaberger's proposed "rehabilitative" testimony, we cannot conclude that the exclusion of such testimony created prejudicial error which would require reversal in this instance. Thus, for this additional reason, we reject Appellant's contention that he was denied effective trial counsel as a result of his attorney's failure to preserve for appeal the issue of the trial court's refusal to permit the question to Shultzaberger as to the reason for his guilty plea.

The Appellant's third contention on this appeal is that his trial counsel was ineffective in failing to include claims of prosecutorial misconduct in post-trial motions, thereby preserving them for appeal. It is argued that at two points during the trial, the prosecutor suggested, through questions, that defense counsel had revealed confidential information disclosed by co–defendants.

On the first occasion, the prosecuting attorney was cross–examining Dennis Shultzaberger, who had earlier pleaded guilty to rape charges arising out of the incident in which the Appellant was charged. The transcript shows the following colloquy:

Q Isn't it a fact that you have told people that you are afraid of these two individuals [the defendants]?

A No.

Q You never asked anyone to keep these two individuals away from you?

A No.

Q They are friends of yours, right?

A Yes.

Q And you are not afraid of them?

A No.

Q You are not afraid that if you said something here that wasn't helpful to them, they wouldn't hurt you, is that right?

A No, I'm not–

Q You're not afraid of that?

A No.

Q You never told your lawyer you were afraid?

A I told my lawyer when we was here I didn't want to go to the County—and I happened to mention to him, "Do you know what happens to a young man that goes to the County—" and he took it for granted I was talking about these two going to get me in the County, which I wasn't.

Q You never told him that you were afraid of these two?

A No, I didn't.

Q That you were in fact terrified of these two?

A No, I did not.

Q What would you say if I told you that your lawyer told me—

FIRST DEFENSE COUNSEL: Objected to.

SECOND DEFENSE COUNSEL: Objected to.

FIRST DEFENSE COUNSEL: Highly improper.

THE COURT: Objection sustained.

The second occasion of alleged improper prosecutorial inquiry allegedly occurred when the prosecuting attorney was cross–examining the Appellant's brother and co–defendant, Charles Reidenbaugh, concerning the younger victim. The record shows the following:

Q And you didn't notice whether or not she had a big red mark on her chin?

A I was drinking. She was all made up with rouge and everything on. I don't know what it was.

Q Well, didn't you tell your attorney that she was wearing hot pants?

A No, I did not.

Q Well, do you know where he got that?

A No. He must have misunderstood me or—

Q Might have thought this was a set of hot pants, right?

A I don't know.

■■■ Our courts have condemned attempts of prosecutors to distort facts in any effort to mislead the jury to the prejudice of a defendant. See *Commonwealth v. Revty*, 448

Pa. 512, 295 A.2d 300 (1972). The law relating to prosecutorial misconduct was thoroughly reviewed in *Commonwealth v. Hoss*, 469 Pa. 195, 364 A.2d 1335 (1976), where the Court was presented with a factual situation highly analogous to that presented by the instant appeal. In *Hoss*, the prosecutor asked a co–defendant if he would be surprised to learn that the appellant admitted to a psychiatrist his participation in the crimes charged. The Supreme Court found that no reversible error had occurred. In doing so, the Court quoted other cases and stated several guidelines to be followed in such cases:

> "In other instances, however, we found that a new trial was not necessary either because the impact of the prosecutorial conduct was not sufficient to have tainted the verdict . . . even where the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required . . . . The language must be such that its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict . . . . The effect of such remarks depends upon the atmosphere of the trial . . . and the proper action to be taken is within the discretion of the trial court." 469 Pa. at 210, 364 A.2d at 1343 (citations omitted).

In the instant case, we find no basis to support a conclusion that the two incidents of questioning by the prosecutor could have prejudiced the jurors or created a fixed bias or hostility towards the jurors. The first series of questions merely yield a staunch denial by the witness of having any fear of the Appellant and his brother. The witness was permitted to explain his discussion with his attorney. The court sustained an objection to the half–finished final inquiry of the Commonwealth's attorney on the point about which the witness had already thoroughly testified. No fixed bias or hostility on the part of the jury could have been created in that circumstance against either defendant.

As to the second set of questions, involving cross–examination of Appellant's co–defendant about what he had told his own attorney about the victim's apparel, it is again impossible to find any prejudice to the Appellant. Nothing in that colloquy even touched upon the Appellant and he could not have suffered any ill will of the jurors as a result of it. It is simply impossible to find that any "fixed bias" or "hostility" could have been created against the Appellant merely because the jurors might have thought that his brother told his own attorney that one of the women was dressed in any particular apparel.

It may have been unwise or even improper for the prosecuting attorney to have questioned either witness about conversations with their respective attorneys. However, in light of the complete absence of any arguable prejudice to the Appellant, his own attorney could not be deemed ineffective for failing to raise points on appeal concerning such incidents.

The Appellant next argues that his trial counsel was ineffective in failing to assure that the jury was instructed to limit their consideration of a statement by his brother and co–defendant which was admitted into evidence. The statement in issue was made by Charles Reidenbaugh to the Hampton Township Police after the incident, and included the declaration that: "... we had sex relations with the girls."[4] Appellant asserts that his attorney should have requested that the jurors be instructed to limit their consideration of the statement, applying it only in their considera-

4. As read to the jurors, the complete statement was: "I went into a bar in West View where these girls were sitting. We was having a beer and we I believe had started talking to the two girls. They said that they needed a ride and was willing to go anywhere we wanted to go. We then got into the car and drove off. They then let us fondle around with them. They said they would put out if we gave them drinks and money. We then went to a place called Hardies Lake which—meaning Hardies Lake—where we had sex relations with the girls. They was willing to do so. There was no means of a forcible rape. The girls then said they wanted to go back to the North Side to visit their boy friend who lived there. So I gave the girls money and left them out of the car. Whatever happened to them after that, I do not know." Signed "Charles Reidenbaugh."

tions in the case of Charles Reidenbaugh. Further, he argues that his attorney was ineffective in not preserving in post–trial motions the issue of the court's failure to give the jury a limiting instruction regarding the statement.

The record shows that immediately prior to the introduction of the statement by the Commonwealth, a sidebar discussion was held. Defense counsel for Appellant objected to the proposed admission, since it used the plural "we". The attorney for Appellant's co–defendant and brother, Charles Reidenbaugh, insisted that if the statement was read, it should be read in its entirety, exactly as it was written. The prosecuting attorney stated that the proper procedure would be for the trial judge to instruct the jurors that where the word "we" was used, it should be taken to refer to Charles Reidenbaugh. No such instruction was stated by the judge at the time of the admission of the statement or during the judge's jury charge. Appellant's counsel, despite his earlier objection to the statement, did not seek a limiting instruction by the court at the time the statement was introduced. We cannot determine from the record submitted to this Court whether or not the issue was covered by a written request that it be included in the court's charge to the jury, or whether it was raised in post trial motions.[5] The Appellant has alleged that his counsel failed to preserve the issue in either manner.

Both parties to this appeal cite the case of *Commonwealth v. Holloway*, 429 Pa. 344, 240 A.2d 532 (1968) for authority and the Commonwealth states that the decision therein represents the consistent view of the Pennsylvania Supreme and Superior Courts as to admissions by co–defendants. In *Holloway*, the Supreme Court analyzed a situation in which one Thomas Adams, a co–conspirator in a theft, admitted to a fellow employee his own participation and that of his co–conspirators in the incident. The statement

---

5. The record furnished to our Court does not include written points for charge submitted by any party at trial. Moreover, it does not include a copy of any written post–trial motions which may have been filed on behalf of the Appellant.

was made in the absence of the other co–conspirators, after the completion of the crime. The testimony was introduced by the district attorney only against Adams, the individual who had made the statement. It was admitted by the court for the limited purpose of establishing the guilt of Adams. However, the trial judge failed to explain to or instruct the jury as to such limited purpose, either at the time of the admission of the testimony or during the charge. The Supreme Court held that the absence of such an instruction was so prejudicial that a new trial was required. The Court explained:

> "... if the common enterprise is at an end, either by accomplishment or abandonment, evidence of the declarations or acts of one of the conspirators in the absence of the others is admissible only against the one incriminating himself .... And while evidence limited to the question of the guilt of one of the conspirators may be admitted at a joint trial even though it refers to or implicates the others, the trial court must clearly instruct the jury as to the limited purpose and effect thereof.... The acts and declarations of one of the conspirators under such circumstances are not competent to establish the guilt of the others and the jury must so understand. Fundamental fairness demands no less." 429 Pa. at 346, 240 A.2d at 534 (citations omitted).

This rule had been stated in many cases, and is not limited to situations in which the co–defendants were tried on conspiracy charges. *Commonwealth v. Vento*, 410 Pa. 350, 189 A.2d 161 (1963); *Commonwealth v. Epps*, 298 Pa. 377, 148 A. 523 (1930); *Commonwealth v. Evans*, 190 Pa.Super. 179, 154 A.2d 57 (1959); affirmed, 399 Pa. 387, 160 A.2d 407 (per curiam), cert. denied 364 U.S. 899, 81 S.Ct. 233, 5 L.Ed.2d 194 (1960); *Commonwealth v. Dolan*, 155 Pa.Super. 453, 38 A.2d 497 (1944). These holdings appear to be directly applicable in the instant case. Both of the Reidenbaugh brothers denied any sexual relations with either of the victims. The defense testimony was consistent in contending that only one of the men present, Dennis Shultzaberger,

had sexual relations with either female, a consensual act with the older prosecutrix. The statement of Charles Reidenbaugh, to the contrary, was that "... *we* had sex relations with the *girls*." This statement was given to the police, after the incident, and outside the presence of the Appellant. This admission was clearly prejudicial to the Appellant. While Charles may have meant to include himself and some male companion other than his brother when he used the term "we", such was not evident to the jurors. Rather, Charles merely disavowed the statement and claimed that the officers had, in essence, dictated it and he signed it only under pressure. If the jurors did not credit that disavowal, they could easily have inferred that the "we" in the statement referred to Charles and his brother, Thomas, the Appellant, who was the only other defendant in their joint trial.

The trial judge in the instant case never instructed the jurors, at any time, of the limitation under which they should consider the admission. It appears that Appellant's trial counsel should have sought such limiting instructions, especially after the prosecuting attorney suggested the proper course of action to the court at the time of the admission of the statement. Moreover, efforts should have been made to raise the issue in post–trial motions.

 In the absence of a complete record, we cannot say conclusively that such steps were not attempted by Appellant's trial and post–trial counsel. Therefore, we must remand this matter to the lower court for hearings to further explore whether defense counsel did in fact seek a limiting instruction concerning the co–defendant's statement or attempt to preserve in post–trial motions the failure of the trial court to charge the jury on the point. At such hearings, counsel may be afforded the opportunity to explain any strategy which may have been followed, if the failure to seek a limiting instruction was purposeful or if the issue was intentionally excluded from post–trial motions filed on Appellant's behalf.

318 

██ The Appellant's final contention is that there was not sufficient evidence to support his conviction. This point deserves only brief discussion. Appellant's argument, in this regard, is that it was not shown that the intercourse with either female was forcible rape. In support of this claim, he cites defense testimony that the alleged victims did not scream for help.

Appellant's argument of insufficient evidence is without merit. The victims provided clear testimony to support the jury's conclusion that the intercourse was forcible and involuntary. The jury obviously credited the victims' version of the events, and we find no basis for reversal in that finding. We reject Appellant's contention regarding the sufficiency of the evidence.

Judgment of sentence vacated and this case is remanded to the lower court for proceedings consistent with this opinion.