427 A.2d 1380

COMMONWEALTH of Pennsylvania,

v.

Roy Wilbur KITTRELL, Appellant.

Superior Court of Pennsylvania.

Argued March 6, 1980.

Filed April 3, 1981.

Gerald E. Ruth, York, for appellant.

Sheryl A. Dorney, Assistant District Attorney, York, submitted a brief on behalf of Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The defendant-appellant, Roy Wilbur Kittrell, having been convicted of Recklessly Endangering Another Person,[1] and two counts of Terroristic Threats[2] now brings this appeal from the judgment of sentence following the dismissal of his post-trial motions. He raises three issues. First he argues he was not afforded reasonable opportunity to obtain

1.  18 Pa.C.S.A. § 2705.

2.  18 Pa.C.S.A. § 2706.

private counsel of his choosing. Secondly, he argues he was denied effective assistance of counsel. Lastly, he contends his sentence of not less than three years and not more than eight years in a state penitentiary was excessive.

## CONTINUANCE

Appellant was charged on April 6, 1979 and held on $30,000.00 bail, later reduced to $25,000.00 which he could not post. He remained in jail awaiting trial from the date he was charged until July 19, 1979 when his case was called for trial. During this period, he was represented by a public defender, who appeared with him on July 19th and made his first request for a continuance so that he might engage private counsel. Appellant testified he had made two unsuccessful attempts to secure private counsel while he was confined in jail where he was restricted to two phone calls a week; and that he had an income of $250.00 per month from social security; also that he had money in the bank and that his nephew would supply money.

His request was denied for the reasons that (1) the court did not believe that he had means to obtain private counsel, (2) that he had sufficient opportunity to engage private counsel before trial, and (3) that his request for a continuance was an attempt to delay the trial without a valid reason. At the time appellant's request was made, the Commonwealth was ready to proceed with the trial, having all of its witnesses, albeit few in number, in court.

The allowance of continuances is largely a matter within the discretion of the lower court and the denial of a continuance does not constitute reversible error unless there is an abuse of discretion. *Commonwealth v. Smith*, 442 Pa. 265, 275 A.2d 98 (1971). It must not be overlooked that one charged with crime has a constitutional right to choose at his own cost and expense any lawyer he may desire. Const. of Pennsylvania Art. 1, § 9, *Commonwealth v. Novak*, 395 Pa. 199, 150 A.2d 102 (102) cert. denied, 361 U.S. 882, 80 S.Ct. 152, 4 L.Ed.2d 118 (1959), reh. den. 361 U.S. 926, 80 S.Ct. 290, 4 L.Ed.2d 241 (1959).

■ Generally in determining the question of whether a court abuses its discretion in denying a continuance, an accused's right to choose a particular counsel, which is not absolute, must be weighed against the public need for the efficient and effective administration of justice. *Commonwealth v. Atkins*, 233 Pa.Super. 202, 336 A.2d 368 (1975). In determining this issue, each case must be decided by balancing the competing interests. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), reh. den. 377 U.S. 925, 84 S.Ct. 1219, 12 L.Ed.2d 217 (1964).

■ Viewing this case in light of these principles, we cannot say the lower court abused its discretion under the circumstances present herein. The appellant claimed he had money from social security payments, had money in the bank, and had made unsuccessful efforts to secure other counsel, yet he waited until the day his case was called for trial before seeking a continuance, a tactic condemned in *Commonwealth v. Smith*, 442 Pa. 265, 275 A.2d 98 (1971). Furthermore, he advanced no irreconcilable differences with the public defender who had represented him for over four months, as was the case in *Commonwealth v. Tyler*, 468 Pa. 193, 360 A.2d 617 (1976). Merely expressing dissatisfaction, his incarceration in the York County jail would not have prevented him from making his request at an earlier date.

On the other hand, the Commonwealth and the court were both ready to proceed. A continuance under the circumstances would have disturbed the efficiency and effectiveness of the administration of justice by rescheduling the case and revising subpoenas with the resulting lost time of the witnesses.

## INEFFECTIVENESS OF COUNSEL

■ Secondly, appellant alleges the ineffectiveness of trial counsel. Specifically, he complains that counsel (1)

failed to question or challenge any jurors, (2) failed to make his opening statement at the beginning of trial, (3) failed to call a known and available eyewitness or any character witnesses, and (4) failed to phrase questions on cross-examination to appellant's liking.[3]

The test for determining whether counsel is ineffective is well-known in this Commonwealth. If the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests, then counsel's assistance must be deemed constitutionally effective. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). *Commonwealth v. Sisco*, 482 Pa. 459, 393 A.2d 1197 (1978). The corollary to this test is that since ". . . counsel does not forego an alternative which offers a substantially greater potential for success when he fails to assert a baseless claim, counsel cannot be found to have been ineffective for failing to make such an assertion." *Commonwealth v. Hubbard*, 472 Pa. 259, 277, 372 A.2d 687, 695 (1977).

Claims numbered 1, 2, and 4 are clearly specious. A voir dire was conducted, although not recorded. The mere fact that no jurors were challenged without more cannot be determinative of one's efficacy as trial counsel. Similarly, the delay of defense counsel's opening statement indicates only a reasonable trial tactic designed to effectuate his client's interests by minimizing the Commonwealth's evidence and detailing the defense to the jury immediately prior to its presentation. Such a course of action certainly has a rational basis and meets this Commonwealth's standard for determining that defense counsel's assistance was effective. See *Commonwealth ex rel Washington v. Maro-*

3. Appellant also contends that counsel knew of appellant's mistrust for him, yet failed to request a continuance prior to the time of trial yet, appellant does not argue that he made such a demand on counsel. Furthermore, at one point, a private attorney who was considering representing appellant reviewed the trial counsel's work on the case and informed appellant that trial counsel was doing a good job. Appellant did not retain this attorney after this evaluation, so we must assume appellant was thereafter satisfied with counsel until the day of trial. As we have stated above, his request at that time was properly denied.

ney, supra, *Commonwealth v. Reidenbaugh,* 282 Pa.Super. 300, 422 A.2d 1126 (1980). Finally, claim number 4 is meritless. We have carefully reviewed defense counsel's cross-examination of the prosecution witnesses and find it to be thorough and penetrating.

Appellant's assertion that an eye-witness was not called merits some discussion but fails to persuade us of counsel's purported ineffectiveness. In order to analyze appellant's claim, we must first review the facts of the offense.

Appellant had been experiencing some difficulty with a neighbor in his apartment building, Ifrain Rodriguez. In order to show Rodriguez that he would not be intimidated, appellant went to Rodriguez' apartment with a gun. When Rodriguez answered the door, appellant fired the gun into the wall to demonstrate that he was armed. Rodriguez called the police after appellant returned to his apartment. When the police arrived and approached his apartment, appellant was holding a gun in his hand. He admitted officer Dennis O'Neill into his apartment and informed the police officer that it was time for him to die and that he would kill two white policemen before he did so. Eventually, additional police forces subdued the appellant and he turned his weapon over to them.

The eye-witness, another neighbor, who appellant claims should have been called, would have allegedly testified to substantially the same facts as stated above.[4] He was outside appellant's apartment during most of the incident, but did catch a glimpse of appellant and his gun at one point. He attempted to enter and reason with the appellant, but the police, fearing for his safety, prevented him from doing so.

In the case at bar, we have reviewed the testimony of the alleged eye-witness and find that he would have added nothing of any significance to appellant's defense. He was not present at the instigation of this scene when appellant threatened Mr. Rodriguez and he was not permitted to enter

4.  The proposed testimony of this witness was contained in a signed affidavit attached to appellant's brief.

appellant's apartment during the confrontation with the police. He admitted in his affidavit that he only came downstairs from his apartment when the situation became heated. Therefore, he was not even present during the entire affair.

Since his testimony would have added nothing of value and would have been limited in scope, counsel was not ineffective in failing to call him to the stand.[5] Case law has made it clear that counsel need not protect himself from allegations of ineffectiveness by making every possible motion or objection, or by calling every possible witness, if there is no merit to such conduct. See *Commonwealth v. Howard*, 258 Pa.Super. 440, 392 A.2d 875 (1978), *Commonwealth v. Lee*, 271 Pa.Super. 504, 414 A.2d 367 (1979).

## SENTENCE

■ Finally appellant contends that the sentence imposed was an arbitrary abuse of discretion and unduly severe under all the circumstances.[6] Appellant, sixty-six (66) years old at the time of the offense in April, 1978, was convicted of Recklessly Endangering Another Person[7] and two Sen-

5. Appellant also contends that unnamed "character witnesses" should have been called by counsel, however, he fails to state who should have been called, how their absence prejudiced his case, or if he ever informed counsel of his desire for such witnesses prior to trial. If counsel did know of them, his failure to call such witnesses had a reasonable basis because such witnesses could have been cross-examined about whether they had ever heard of appellant's prior conviction for assault with intent to kill. By avoiding such testimony, counsel was protecting his client's best interests.

6. Pa.R.Crim.P. 1410 states that a motion to modify sentence must first be raised before the sentencing court, giving it the opportunity to modify the sentence. Such a motion must be filed within ten (10) days of sentencing. Pa.R.Crim.P. 1405(c). Failure to do so results in a waiver of this issue on appeal. However, since the sentencing court did not so advise appellant on the record, as mandated by Pa.R.Crim.P. 1405(c)(3), we will not consider it waived.

7. Recklessly Endangering Another Person is a misdemeanor of the second degree and carries a maximum sentence of two years imprisonment. See 18 Pa.C.S.A. § 1104.

tence Counts of Terroristic Threats.[8]  Sentence was suspended as to the first charge but, on the two charges of Terroristic Threats, he was sentenced to serve two successive terms of imprisonment totalling not less than three (3) years nor more than eight (8) years.

The pre-sentence investigation reflected a record containing convictions for Assault with Intent to Kill in 1958, Surety of the Peace in 1964 and Contempt of Court, also in 1964.  Since then, appellant's record has been free from any convictions or arrests.

Imposition of an appropriate sentence is firmly settled to be within the sound discretion of the lower court and will only be overturned if such discretion is abused.  *Commonwealth v. Valentin*, 259 Pa.Super. 496, 393 A.2d 935 (1978), *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976). To assist in the proper exercise of judicial discretion in sentencing, the legislature promulgated guidelines in the Sentencing Code.[9]  Under this Code, a sentence must be imposed for the minimum amount of time which is:

"... consistent with the protection of the public; the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the Defendant."  18 Pa.C.S.A. § 1321(b).

In formulating a sentence which meets the above criteria, the judge must consider the character of the defendant and the particular circumstances of the crime.  *Commonwealth v. Roberts*, 263 Pa.Super. 237, 397 A.2d 1187 (1978), *Commonwealth v. Martin*, supra.  Thereafter, he must consider the specific statutory provisions in determining whether to impose a period of probation, partial confinement, or total confinement.

8.  Terroristic Threats is a misdemeanor of the first degree and carries a maximum sentence of five years imprisonment.  See 18 Pa.C.S.A. § 1104.

9.  Act of Dec. 30, 1974, P.L. 1052, No. 345, § 1, eff. in 90 days.  As amended 1978, Nov. 26, P.L. 1316, No. 319, § 1, eff. Jan. 1, 1979.  18 Pa.C.S.A. § 1321 (Supp.1980).

In the case at bar, the lower court reiterated the statutory considerations which warrant total confinement according to the Sentencing Code.[10] While we recognize that terrorizing anyone, much less a police officer, with a gun is a very serious charge warranting a substantial sentence, we feel that certain facts militate against such an imposition in this case.

First, with respect to the protection of the public, this crime was not committed capriciously or randomly, but only after trouble developed between appellant and his neighbor necessitating the arrival of the police. After completing a pre-sentence investigation, the Probation Office recommended that appellant receive a sentence of four to twelve months in York County Prison. Appellant had already been imprisoned for four months awaiting trial, so apparently the probation officers did not view appellant as an imminent threat to the Community at large.[11]

Such a recommendation also reflects a belief that appellant's rehabilitative needs would not be best served by an extended prison term. The fact that, prior to this incident, appellant remained free from any criminal violations for the last fourteen years, and free from any serious aggressive

---

**10.** 18 Pa.C.S.A. § 1325 (Supp.1980) provides:
The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:
(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;
(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or
(3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

**11.** We must note the rather inconsistent stance of the lower court in stating at sentencing:
"We believe that there is an undue risk that during a period of probation or partial confinement, that the defendant will commit another crime ..."
and yet releasing the defendant on bail during the pendency of his appeal to our court. That appellant has been free awaiting the appellate review of his case bolsters our conclusion that probation or partial confinement would satisfy the guidelines enunciated in the Sentencing Code.

behavior for the last twenty years indicates that his rehabilitative need is not great, and suggests that the circumstances surrounding this incident may have precipitated the offense.

Finally, we cannot ignore the fact that appellant is now nearly sixty-eight years old and is suffering from physical problems, as admitted by the sentencing judge.

The above factors in this case find support in the grounds mentioned in the Sentencing Code section on probation. 18 Pa.C.S.A. § 1322 (Supp.1980) includes among the probation guidelines such considerations as "The defendant . . . has led a law-abiding life for a substantial period of time before the commission of the present crime." 18 Pa.C.S.A. § 1322(7). In addition, the court must analyze whether the defendant is particularly likely to respond affirmatively to probationary treatment, and whether the confinement of the defendant would entail excessive hardship to him. 18 Pa.C.S.A. § 1322(10) and (11). The Supreme Court stated that while ". . . the probation guidelines in the Sentencing Code do not exclusively control the discretion of the trial court, the Code mandates that the grounds be 'accorded weight.'" *Commonwealth v. Kostka*, 475 Pa. 85, 91, 379 A.2d 884, 887 (1977). See also *Commonwealth v. Wicks*, 265 Pa.Super. 305, 401 A.2d 1223 (1979), *Commonwealth v. Butch*, 487 Pa. 30, 407 A.2d 1302 (1979).

In weighing the factors of this case, we do not believe that a lesser sentence will depreciate the seriousness of the crime. We are confident that a period of probation or partial confinement would serve well the spirit and purpose of the Sentencing Code, the desire to protect the public, and the rehabilitative needs of the appellant.

Judgment of sentence is vacated and case remanded for resentencing consistent with the above opinion.

WATKINS, J., filed a concurring and dissenting opinion.

WATKINS, Judge, concurring and dissenting:

I agree with the portion of the majority's opinion affirming the defendant's conviction. However, I would defer to

the discretion of the trial judge regarding the sentence he imposed and would affirm the sentence since the defendant, despite his age, has continued to display violent, antisocial propensities.